IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANTONIO MEDINA,

        Plaintiff,

  v.

MICROSOFT CORPORATION, et al.,

        Defendants.
_____/

No. C 14-0143 RS

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

## I. INTRODUCTION

In this dispute between a California inventor and various technology companies, *pro se* plaintiff Atonio Medina alleges defendants Microsoft Corporation, Canesta Corporation, 3DV Systems, and Microsoft employee Cyrus Bamji (i) infringed his patent, (ii) engaged in a campaign of unfair competition, and (iii) tortuously interfered with a prospective economic advantage. Defendants move to dismiss Medina's latter two claims, both of which arise under state law. For the reasons set forth below, the challenged claims fail to state a claim upon which relief can be granted. Additionally, Medina's tort claim is untimely. The second and third claims are therefore dismissed with leave to amend. Pursuant to Local Rule 7-1(b), this matter is suitable for disposition without oral argument.

## II. BACKGROUND[1]

In 1992, Atonio Medina, an electrical engineer and medical doctor, obtained a patent for the invention of a "three dimensional camera and range finder."[2] (FAC ¶ D1). Medina also founded Multivision Research, a company involved in the development, manufacture, and sale of a three-dimensional camera and range finder embodying his patented invention.

A few years before the patent expired, Medina took note that certain defendants were making, using, selling, offering for sale, and/or importing devices that allegedly infringed his patent. At some point before January 2008, Medina contacted 3DV, a California corporation, to inform it that 3DV's "cameras and chips" were infringing his patent. (FAC ¶ E2). As a result, Medina and 3DV held numerous meetings to discuss a potential agreement whereby plaintiff would assign the patent to 3DV in exchange for company stock, a lump sum, and an employment contract. Medina also noticed in 2008 that defendant Canesta, another California corporation, was selling certain cameras and sensors that allegedly infringed his patent. Medina avers that both Canesta and 3DV sold their infringing products to Microsoft, which used those devices in certain projects and development activities beginning in January 2008. Later on, after the patent's January 2009 expiration, Microsoft allegedly purchased 3DV and Canesta.

Despite their numerous meetings, Medina and 3DV never finalized the proposed licensing/employment agreement. Instead, the FAC alleges, 3DV "misled Dr. Medina into thinking that they were going to make a deal with him when, in fact, they were making a secret deal with Microsoft." (FAC ¶ E17). "The real purpose of 3DV's negotiations," he avers, "was delay." (FAC ¶ E18). Medina "reasonably believed" 3DV would give him a share of the company in exchange for a patent license agreement, but 3DV allegedly "slow-walked" Medina past the patent's expiration date, after which point it consummated a multi-million dollar deal with Microsoft. (FAC ¶ E23).

---

[1] Medina lodged his initial complaint on January 10, 2014. (ECF No. 1). After defendants filed a motion to dismiss, Medina amended his complaint as a matter of right on March 21, 2014. (ECF No. 22). The factual background is based on the averments in the First Amended Complaint ("FAC"), which must be taken as true for purposes of a motion to dismiss.

[2] The USPTO issued Patent No. 5,081,530 to Medina on January 14, 1992.

2

Medina claims Canesta and Microsoft misled him, too. In late December 2009, Medina sent a letter to James Spare, Canesta's CEO, concerning the company's alleged infringement of his patent. In a reply sent the following month, Canesta stated that the company "ordered the file history for USP 5081530 and will get back to you." (FAC ¶ E19). In February 2010, after discovering that Microsoft was allegedly infringing his patent, Medina contacted Microsoft CEO Steve Ballmer. The company replied on March 4, 2010, stating that "the technology does not fit within our current business needs." (FAC ¶ E20). Later that year, Medina met with defendant Cyrus Bamji, CTO of Canesta, to discuss Canesta's technology and witness a demonstration of its 3D camera. Again, Medina informed Canesta that the company was infringing his patent.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on

either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV.   DISCUSSION

### A.  Second Claim: Unfair Competition

California's unfair competition law ("UCL") prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200. Accordingly, "an act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal. App. 4th 1544, 1554 (2007). Here, Medina alleges that in addition to infringing his patent, defendants "obstructed and unfairly competed with" Medina's business in the following ways:

(a) making Medina's company "lose business, sales and profits from January 2008 and thereon,"

(b) using Medina's patented invention without a license during and after January 2008,

(c) undertaking a campaign to mislead Medina into thinking that his technology would be lawfully licensed and that he would be gainfully employed,

(d) preventing Medina from "commercializing" his technology "by supplying the market with low priced, unlicensed infringing devices" beginning in January 2008, and

(e) dissuading various other entities from licensing Medina's technology.

(FAC ¶ E13). According to Medina, Microsoft deliberately tried to harm Medina and "encouraged infringement of his patent." *Id.*

As an initial matter, the Patent Act preempts unfair competition claims that are not "qualitatively different" from a federal patent infringement claim. *See Summit Mach. Tool Mfg.*

4

*Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993). To the extent Medina's UCL claim proceeds under the "unlawful" prong of the statute due to defendants' alleged patent infringement, it is preempted. *See Halton Co. v. Streivor, Inc.*, C 10-00655 WHA, 2010 WL 2077203, *4 (N.D. Cal. May 21, 2010). Accordingly, the second claim is not actionable under the theories that defendants used Medina's patented invention or flooded the market with unlicensed, infringing devices. (*See* FAC ¶ E13(b), (d)). Similarly, it appears that the conduct alleged in item (a) of Paragraph E13 flows directly from defendants' alleged infringing use. If Medina believes defendants engaged in some *other* activity to make his company "lose business, sales and profits from January 2008 and thereon," his complaint lacks factual allegations to support any such claim. *See Iqbal,* 556 U.S. at 678.

This leaves two sets of allegations: that defendants (c) engaged in a campaign to mislead Medina and (e) dissuaded other entities from licensing Medina's technology. The FAC does not specify whether this conduct violates the "unfair," "unlawful," or "fraudulent" prong of the UCL. If Medina believes this conduct to be "unlawful," he must explain how defendants' conduct amounts to a predicate violation of some other law—not including, as discussed above, defendants' alleged patent infringement. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable") (citations and quotation marks omitted).

To the extent Medina contends defendants' concerted conduct was "fraudulent," his allegations must be pled with specificity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Although Medina names certain entities that were allegedly dissuaded from licensing his technology, he offers no explanation of *how* or *when* such dissuasion occurred. *See Cooper*, 137 F.3d at 627. Perhaps more problematically, it is unclear that defendants' behavior, even if "fraudulent," is the type of conduct that falls within the ambit of California's unfair competition statute. *See Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Cal. 2001) (The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest."). Absent allegations that defendants made deceptive statements to the public or that their actions harmed the public interest, Medina's

UCL claim is not viable under the "fraudulent" prong. *See Damabeh v. 7-Eleven, Inc.*, 5:12-CV-1739-LHK, 2012 WL 4009503 (N.D. Cal. Sept. 12, 2012).

To the extent Medina alleges simply that defendants' conduct was "unfair," he fails to identify conduct that could give rise to such a violation. An act is "unfair" under the UCL if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Cel-Tech*, 20 Cal. 4th 187 (1999). Medina's FAC does not endeavor to identify any potential "consumer injury," much less a "substantial" one, caused by defendants' alleged acts.[3] *See Camacho,* 142 Cal. App. 4th at 1403.

In fact, the UCL does not even provide the sort of relief Medina is seeking. His FAC prays for direct damages, "an accounting for treble damages," punitive damages, costs, and attorney fees. (FAC ¶ F). Under the UCL, however, prevailing plaintiffs are generally limited to injunctive relief and restitution. *Cel-Tech*, 20 Cal. 4th at 179. "While the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Because Medina fails to state a claim under the UCL, and because the statute does not allow the remedies he seeks, the second claim is dismissed.

B. Third Claim: "Interference"[4]

To prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must prove "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

---

[3] The California Supreme Court has directed courts to look to the jurisprudence arising under section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, for guidance in applying the unfair prong of the UCL. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581 (2009). The factors defining "unfairness" under that section are: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006).

[4] Medina does not specify whether this claim is for (a) intentional interference with prospective economic advantage or (b) negligent interference with prospective economic advantage. Due to his repeated averments that defendants' conduct was fraudulent and intentional, this order construes his claim as alleging intentional interference. The distinction is of no consequence here, though, because both torts require that the defendant disrupt an economic relationship between the plaintiff and a third party. Because Medina fails to plead facts to support this element, he cannot state a claim under either tort theory.

6

relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Id.* (citations and alterations omitted). The FAC lacks sufficient allegations to satisfy the basic elements of this tort. Although Medina alleges that he had an economic relationship with his company, Multivision Research, this misses the mark. Assuming that Medina's own company could qualify as a "third party" for purposes of the tort, defendants did nothing to "disrupt" plaintiff's relationship with his own company. *See id.* If anything, Medina's claim is more properly premised on the notion that defendants' conduct disrupted his fledgling "relationship" with 3DV. This is not enough, though, because Medina's various negotiations and discussions with 3DV never crystalized into something more.[5] Accordingly, no specific, identifiable economic relationship was disrupted by defendants' alleged actions. Instead, Medina's allegations "at most express the hope for a future economic relationship" with 3DV, Canesta, or Microsoft. *See Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1123 (N.D. Cal. 2010) *aff'd sub nom. Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011).

In addition to being substantively deficient, Medina's third claim is untimely. California imposes a two-year limitations period on claims for intentional interference with prospective economic advantage. Cal. Civ. Proc. Code § 339. The FAC alleges that defendants undertook certain unlawful acts in 2008, 2009, and 2010. Medina's complaint was not filed, however, until 2014.

Medina contends that defendants fraudulently concealed the existence of his claim for several years, thereby tolling the statute of limitations, but he fails to allege sufficient facts to support such a theory. "Fraudulent concealment necessarily requires *active conduct* by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff suing in time." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000) (emphasis added). To toll the statute of limitations on the basis of fraudulent concealment, the plaintiff must plead the supporting facts with particularity. *Guerrero v. Gates*, 357 F.3d 911, 920 (9th Cir. 2004),

---

[5] The same can be said for any prospective licensing opportunities with Honda, Optex, or the other entities that defendants allegedly "[d]issuaded . . . from taking a license from Dr. Medina for the '530 patent." (FAC ¶ 13). There are no allegations to suggest that Medina had an economic relationship with any of these companies.

7

*superseded by Guerrero*, 442 F.3d 697 (2006).  The FAC lacks sufficient factual averments to explain how defendants' conduct precluded Medina from suing at a much earlier date.  Although Medina claims 3DV misled him into believing that some sort of licensure/employment agreement was imminent, he does not explain how 3DV's conduct sufficed to conceal his interference claim for more than four years.  A plaintiff alleging fraudulent concealment must, among other things, plead with particularity "the facts supporting [his or her] due diligence."  *Chan v. Chancelor*, 2011 WL 5914263 (S.D. Cal. 2011).  Even assuming that 3DV misled Medina through fraudulent misrepresentations, the FAC nonetheless fails to explain why Medina could not have discovered his claim much sooner.  If, for example, 3DV continued to mislead him through 2010, 2011, 2012, and 2013, Medina needs to identify such conduct with specificity.  It is not enough for him to aver generally that "[n]umerous meetings and communications were held" beginning in 2008.  He must allege the "who, what, where, *when*, and how" of the charged misconduct.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (emphasis added).

      The same can be said for Medina's allegations that Canesta fraudulently concealed his claim.  Canesta told Medina in January 2010 that it would "get back to [him]" regarding his accusation of patent infringement.  This, without more, is not enough for Medina to have been misled into thinking that Canesta was "going to make a deal with him." (Pl. Reply, ECF No. 34, 8:15).  Moreover, even if Medina could demonstrate that such a belief was reasonable in the first place, his allegations fail to show that he could not have discovered his claim through reasonable diligence in subsequent years.

      Finally, as to Microsoft, Medina alleges he was misled by the company's March 2010 letter stating that his technology did not meet its business needs.  Although Medina may not have discovered the company's use of the contested technology until September 2013, it is far from clear how Microsoft's conduct served to conceal fraudulently his claim for intentional interference.  While Microsoft may have "concealed" an alleged interest in the contested technology, it is unclear how such interest—later evidenced, Medina avers, by his September 2013 discovery—is relevant to this claim.  Indeed, as explained above, there is no basis in these allegations for an interference claim against 3DV, Canesta, or Microsoft in the first place.  Accordingly, the third claim is dismissed.

8

## V. CONCLUSION

For the aforementioned reasons, Medina's second and third claims are dismissed. It appears that defendants' alleged conduct falls primarily, if not entirely, within Medina's first claim for patent infringement. Where the gravamen of Medina's complaint is that defendants infringed his patent (and were unfair and misleading in doing so), state law claims for unfair competition and intentional interference may not have a place in this lawsuit. Nonetheless, because the Ninth Circuit has instructed that leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment, *see Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995), Medina's state law claims are dismissed with leave to amend. Should Medina elect to amend his pleadings, he must lodge an amended complaint within thirty (30) days from the date of this order. Medina is encouraged to consult with the court's pro se help desk, available at 415-782-8982.

IT IS SO ORDERED.

Dated: 5/23/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

9