Judith B. Jennison, Bar No. 165929
JJennison@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendant
Microsoft Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTONIO MEDINA,<br><br>           Plaintiff,<br><br>   v.<br><br>MICROSOFT CORPORATION, et al.,<br><br>           Defendants. | Case No. 3:14-cv-00143-RS<br><br>MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER<br><br>Date:    August 7, 2014<br>Time:   9:00 a.m.<br>Place:   Courtroom F, 15th Floor<br>Judge:  Magistrate Judge Jacqueline Corley |

**I.     INTRODUCTION**

Microsoft seeks to modify the Northern District of California Interim Model Protective Order to prevent Mr. Medina from having access to materials Microsoft designates "confidential" under the order. Contrary to Medina's contentions, this request is not unprecedented or controversial. The Federal Rules of Civil Procedure allow the court to place restrictions on the disclosure of confidential information to protect the interests of the disclosing party. Fed. R. Civ. P. 26(c)(1)(G). "Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007).

Medina argues: (a) the order will deprive him any ability to prosecute this case; (b) he is not a competitor (and therefore his access to Microsoft's confidential information poses no risk to

-1-     MICROSOFT'S REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER
3:14-cv-00143-RS

Microsoft); and (c) his criminal convictions for fraud are irrelevant to the issue of whether he can be trusted to abide by the protective order.

First, the order will not deprive Medina of his ability to prosecute his case since he may hire counsel or an expert to review the information. Such restrictions are imposed so routinely in this district that an "attorneys' eyes only" category is included in the default Interim Model Protective Order pursuant to Local Rule 2-2. Second, Medina's claim that he is not currently a competitor of Microsoft's, even taken at face value, does not ensure that he won't work in competition with Microsoft in the future. Third, Medina's criminal convictions for bank fraud are directly relevant to his lack of trustworthiness and his willingness to flaunt the law.

## II.   ARGUMENT

The legal question posed by this motion is whether the protections Microsoft seeks appropriately balance (a) the risk to Microsoft from disclosure of its confidential information against (b) the risk that the restrictions will impair Medina's ability to prosecute his case. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The protection Microsoft seeks is neither controversial nor unprecedented. Microsoft is not seeking to withhold documents from production. It is simply asking to treat all confidential information as "attorneys' eyes only" in light of the value of Microsoft's confidential information and Medina's criminal history.

**A.   Microsoft's Proposed Order Will Not Prevent Medina From Prosecuting His Case**

Medina seems to misunderstand that the Northern District's Interim Model Protective Order – the default order in place under Patent Local Rule 2-2– already restricts Medina's access to information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."[1] As a *pro se* litigant, he is not "Outside Counsel of Record" as defined in the order. *See* Interim Model Protective Order ¶ 2.12 ("attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party").

---

[1] The Interim Model Order similarly restricts party access to materials designated "HIGHLY CONFIDENTIAL – SOURCE CODE." It is unclear whether source code production will be required in this case.

-2- MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
3:14-cv-00143-RS

1   Therefore, if Medina wishes to use Microsoft's "HIGHLY CONFIDENTIAL" materials in this
2   case, he is already required to retain an attorney or expert to review the documents for him. Such
3   restrictions are common in cases involving confidential information. Indeed, if they were not, the
4   Interim Model Protective Order would not include such a provision. *See also Nutratech*, 242
5   F.R.D. at 555 ("Courts commonly issue protective orders limiting access to sensitive information
6   to counsel and their experts"); *Levine v. United States*, 226 Ct. Cl. 701, 703-05 (1981) (restricting
7   *pro se* plaintiff access to all confidential materials); *Safe Flight Instrument Corp. v. Sundstrand
8   Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988) (restricting access for President of one of the
9   parties).
10         Such restrictions on party access to confidential materials are routinely imposed even for
11  *pro se* parties. *See, e.g.*, *Schlafly v.Public Key Partners*, C 94-20512 SW(PVT) (N.D. Cal. July
12  19, 1995) (order granting motion for protective order) (finding that a protective order that
13  prohibited a *pro se* plaintiff from receiving certain confidential information was appropriate, even
14  though it required plaintiff to retain counsel or an independent expert to review the information);
15  *Levine*, 226 Ct. Cl. at 703-05 (restricting *pro se* plaintiff access to all confidential materials). In
16  *RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*, the defendant, a *pro se* litigant, sought access to
17  confidential information just as Medina does here, arguing that he lacked the financial resources
18  to hire a lawyer. No. 06-CV-1147 WQH(AJB_, 2007 WL 4105725, at n. 1 (S.D. Cal. Nov. 16,
19  2007). The court denied his request because it could not "definitively conclude that [defendant]
20  lacks the necessary resources to hire an attorney who can review the information subject to the
21  Protective Order." *Id.* at *3. There, the defendant had submitted some financial documents, but
22  had failed to explain how they supported his contention. *Id.* at n.1. Here, Medina has made no
23  factual showing at all – no financial records, expenses, analysis, etc. Though he contends he has
24  tried to hire counsel, he has offered no supporting facts, such as the names of the lawyers or firms
25  he has contacted, or whether he has attempted to hire *pro bono* counsel. Without clear and
26  credible evidence to support his claim, the Court cannot conclude that Medina lacks the resources

-3-   MICROSOFT'S REPLY IN SUPPORT OF MOTION
      FOR PROTECTIVE ORDER
      3:14-cv-00143-RS

to hire a lawyer. But even if he did, that would be but one factor for the court to consider, and it would not overshadow Microsoft's need for protection under these circumstances. *See id.* at *3.

The only substantive provision of the Interim Model Order Microsoft seeks to change is to restrict Medina's access to any information that falls within the definition of "confidential" (not just material that is "HIGHLY CONFIDENTIAL"). It seeks this limitation because Medina's criminal convictions for bank fraud show he is untrustworthy. Since Medina is already required to hire counsel to review "HIGHLY CONFIDENTIAL" materials, this increased protection for Microsoft causes Medina no additional hardship. To effectively oppose this motion, Medina must show that Microsoft's proposed Protective Order actually prejudices presentation of his case, "not merely increase[s] the difficulty of managing the litigation." *Id. at* *2 (quoting *Intel Corp. v. Via Tech., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000)). He has not done so.

**B.     Medina Should Be Treated as a Competitor of Microsoft's**

In the operative Seconded Amended Complaint, Medina asserts a cause of action for unfair competition, claiming that Microsoft's sale of its Kinect devices drove his company, Multivision, out of business.

> Beginning in or before January, 2008 and continuing thereafter to 2014, Defendants committed acts of unfair competition . . . . Dr. Medina owned Multivision, a company involved in the development, manufacture and sale of a three dimensional camera and range finder . . . . Defendants unfairly, unreasonably and unlawfully competed with Dr. Medina's company . . . for the purpose of the manufacture and sale of a three dimensional camera embodying [the patent in suit] without competition.

ECF No. 59, Second Amended Complaint at 6, ¶¶ 12-14. Now faced with this motion, Medina claims that indeed he *was* a competitor of Microsoft's in the 3D camera business until January 2014 (coincidentally when the original complaint was filed). *Now* he's in the medical business. Notably, he offers no underlying details that would lend credibility to his claimed change in profession. For example, what specifically is he doing in the medical business? With whom does he work? Why did he choose to change professions? Medina's uncorroborated and self-serving statements should be given little, if any, evidentiary weight, even setting aside the credibility issues raised by his fraud convictions. Moreover, Microsoft has itself been pursuing medical

-4-   MICROSOFT'S REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER
3:14-cv-00143-RS

applications for the Kinect technology since it was first released in 2010.  (Jennison Decl. ¶ 2, Ex. A.)[2]  To date, the Kinect has known applications in 3D mapping and live surgery (*id. ¶* 3, Ex. B*)* and rehabilitation (*id. ¶* 4, Ex. C*).*  In sum, Medina's purported change in profession does not mean he is not competing with Microsoft.

But even if Medina and Microsoft were working in entirely different industries, the Protective Order would still be appropriate.  Federal Civil Produce Rule 26(c)(1)(G) does not require that the parties be competitors, only that the information be "trade secret or other confidential research, development, or commercial information."  *See also ST Sales Tech Holdings, LLC  v. Daimler Chrysler Co., LLC*, No. 6:07-CV-346, 2008 WL 5634214, at  *6-7 (E.D. Tex. Mar. 14, 2008) (granting a protective order where "Defendants' confidential information could be of value to an entity" like the plaintiff despite the fact that the parties weren't direct competitors); *R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. CIVA 06-032 JJF, 2007 WL 61885, at *2 n.2 (D. Del. Jan. 4, 2007) (granting a protective order where "Defendants' trade secrets and other sensitive information could potentially be of value to Plaintiff" despite the fact that the parties weren't direct competitors).

In addition, Medina could return to the 3D camera business in the future.  In *Nutratech,* even though the parties were not direct competitors, nothing prevented them from becoming competitors.  242 F.R.D. at 555.  Accordingly, the risk of competitive harm by sharing confidential information with the plaintiff's president was legitimate and required that the confidential information be shared only with outside counsel.  *Id.* at 555-56.  The same is true here.

**C.     Medina's Criminal Convictions for Fraud are Relevant to His Trustworthiness**

Medina wrongly contends that his criminal convictions for bank fraud are irrelevant in this civil case for patent infringement.  Evidence of conviction of a crime involving a dishonest act or false statement is admissible to attack a witness's character for truthfulness.  Fed. R. Evid. § 609(a)(2).  *See also Castrijon-Garcia v. Holder*, 704. F.3d 1205, 1215 (9th Cir. 2013) (crimes

---

[2] The "Jennison Declaration" refers to the Reply Declaration of Judith B. Jennison in Support of Microsoft's Motion for Protective Order.

of moral turpitude are relevant to issues of trustworthiness, including to show that a defendant is likely to lie under oath). The fact that Medina has been convicted twice for bank fraud – crimes that involve dishonest acts and false statements – is unquestionably relevant to whether he can be trusted to abide by the protective order in this case as well as to tell the truth about his compliance.[3] Indeed, Medina even misrepresents the charges themselves, stating, "Contrary to Microsoft['s] characterization of the records, the charge [was] deposit of checks with insufficient funds." The record could not be clearer: Both convictions were for bank fraud, not insufficient funds. See *U.S. v. Puerta,* 38 F.2d 34, 37-38 (1st Cir. 1994) (affirming conviction for bank fraud); *U.S. v. Puerta,* No. 11-cr-00055, Dkt. 1 at 2-3 (C.D. Cal. March 2, 2011) (indictment for three counts of bank fraud) (Jennison Decl. ¶ 5, Ex. D) and Dkt. 130 at 1 (C.D. Cal. Oct. 1, 2013) (judgment on three counts of bank fraud) (*id.* ¶ 6, Ex. E).

Medina also argues that his criminal convictions are inadmissible because the court is not entitled to take judicial notice of them. However, "[i]t is well-settled that the court may take judicial notice of matters that can be verified in the public record, including court documents. Courts may properly take judicial notice of 'proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.' " *Reddy v. Medquist, Inc.*, No. CV 12-01324 PSG, 2012 WL 6020010, at *2 (N.D. Cal. Dec. 3, 2012) (citations omitted) (granting request for judicial notice of dockets, filings and orders in other court cases and reasoning that those proceedings were relevant to the motion to declare *pro se* plaintiff a vexatious litigant). *See also Bias v. Moynihan*, 508 F.3d 1212, 1215 (9th Cir. 2007) (granting request to take judicial notice of five prior cases in which plaintiff was a *pro se* litigant to counter argument that she deserves special treatment of her *pro se* status). Accordingly, for purposes of this motion, the Court may rely on the evidence of Medina's bank fraud convictions.

The cases Medina cites do not support his position. *M.V. Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir. 1983), was a contract dispute where the trial judge

---

[3] Medina claims that he is not the plaintiff in all of the eight civil suits identified by Microsoft, though he does not identify which cases are and are not his. He does not dispute that he is in fact the subject of the two bank fraud convictions identified by Microsoft.

considered two unpublished orders in unrelated actions.  The appellate court affirmed, finding "no indication that the district court upheld the applicability of the provision as reasonable in the present case solely because prior courts had done so" and "[t]he record indicates that the district court used the orders solely to identify general policy considerations relevant to the reasonableness of the limitation provisions."  *Id.*  Similarly, *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2002) holds that a summary judgment ruling should not be based almost entirely on findings of fact from another case.  Here, no such factual findings are at issue, nor is this a summary judgment motion.  Finally, the holding in *Guam Investment Co. v. Central Building, Inc.*, 288 F.2d 19 (9th Cir. 1961), is simply not applicable to this case; there, the court held that "on a plea of res adjudicata, a court cannot judicially notice that the matters in issue are the same as those in a former suit."

### III.   CONCLUSION

Microsoft has shown good cause to restrict Medina's access to materials designated confidential (whether or not they qualify as "HIGHLY CONFIDENTIAL" under the Interim Model Protective Order).  Accordingly, Microsoft respectfully requests that its motion be granted.

DATED:  July 23, 2014                              **PERKINS COIE LLP**

By: /s/ *Judith B. Jennison*
    Judith B. Jennison

Attorney for Defendant
Microsoft Corporation