IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANTONIO MEDINA,

    Plaintiff,

v.

MICROSOFT CORPORATION, et al.,

    Defendants.

No. C 14-0143 RS

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND CONTINUING CASE MANAGEMENT CONFERENCE**

## I. INTRODUCTION

In this dispute between a California three-dimensional camera inventor and various technology companies, *pro se* plaintiff Antonio Medina alleges in his Second Amended Complaint that Defendants Microsoft Corporation, Microsoft Corporation as Successor of Canesta, Inc. and 3DV Systems, Inc., and Microsoft employee Cyrus Bamji (i) infringed his patent, (ii) engaged in unfairly competitive business practices, and (iii) sold their camera below cost to destroy the commercial prospects of Medina's company, Multivision Research. Defendants move to dismiss Medina's latter two claims, both of which arise under state law. For the reasons set forth below, the challenged claims fail to state a claim upon which relief can be granted. The second claim is dismissed with prejudice, while the third claim is dismissed with leave to amend. Pursuant to Local Rule 7-1(b), this matter is suitable for disposition without oral argument.


## II.   BACKGROUND[1]

The facts of this case were recounted in this Court's prior order granting the defendants' motion to dismiss with leave to amend. (*See* ECF No. 46). In brief, Antonio Medina obtained in 1992 a patent for the invention of a "three dimensional camera and range finder."[2] (SAC ¶ D1). Medina also founded Multivision Research, a company involved in the development, manufacture, and sale of a three-dimensional camera and range finder embodying his patented invention. (SAC ¶ D7).

Medina contends that from January 2008, defendants began making, using, selling, offering for sale, and/or importing devices that allegedly infringed his patent. (SAC ¶ D3). Prior to January 2008, Medina contacted representatives of defendant 3DV to inform it that 3DV's "cameras and chips" were infringing his patent. As a result, Medina and 3DV held numerous meetings to discuss a potential licensing and/or employment contract; these negotiations never resulted in any final agreement. (SAC ¶ E2).

Medina also discovered in 2008 that defendant Canesta was selling certain cameras and sensors allegedly infringing his patent. (SAC ¶ E3). Medina asserts that both Canesta and 3DV sold their infringing products to Microsoft, which used those devices in certain projects and development activities beginning in January 2008. After the patent's January 2009 expiration, Microsoft allegedly purchased 3DV and Canesta.

Medina alleges that 3DV, Canesta, and Microsoft all misled him. He avers that "the real purpose of 3DV's negotiations [with him] was delay" while 3DV "consummated their deal with Microsoft for several millions of dollars, of which Dr. Medina received nothing." (SAC ¶¶ E2, E22). Medina also avers that despite Canesta's reply to his letter concerning the company's alleged infringement of his patent, which stated that the company "ordered the file history for USP 5081530

---

[1] Medina lodged his initial complaint on January 10, 2014. (ECF No. 1). After defendants filed a motion to dismiss, Medina amended his complaint as a matter of right on March 21, 2014. (ECF No. 22). Defendants then moved to dismiss Medina's state law claims of unfair competition and tortious interference with a prospective business advantage, alleged in his First Amended Complaint ("FAC"), on April 10, 2014. (ECF No. 33). This Court dismissed these claims with leave to amend on May 23, 2014. (ECF No. 46). Medina filed a Second Amended Complaint ("SAC") on June 18, 2014. The factual background herein is based on the averments in the SAC, which must be taken as true for purposes of a motion to dismiss.

[2] The USPTO issued Patent No. 5,081,530 to Medina on January 14, 1992.

2

and will get back to you," Medina never received any further communications from Canesta. (SAC ¶ E18). In February 2010, after discovering that Microsoft was allegedly infringing his patent, Medina contacted Microsoft CEO Steve Ballmer. The company replied on March 4, 2010 that "the technology does not fit within our current business needs." (SAC ¶ E19). Later that year, Medina met with defendant Cyrus Bamji, CTO of Canesta, to discuss Canesta's technology and witness a demonstration of its 3D camera. Again, Medina informed Canesta that the company was infringing his patent.

In September 2013, the SAC avers, Microsoft sold its 3D camera "at a subsidized, below cost price" and "destroyed Multivision's competition and impeded commercialization and sale of Dr. Medina's 3D camera." Defendants allegedly agreed to raise the price once Microsoft acquired a dominant share in the 3D camera market. (SAC ¶ E14). Medina avers that, as a result, he "lost his business, sales and profits." (SAC ¶ E25).

### III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV.   DISCUSSION

### A. Second Claim: Unfair Competition

California's unfair competition law ("UCL") prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Accordingly, "an act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal. App. 4th 1544, 1554 (2007). In his SAC, Medina alleges that in addition to infringing his patent, defendants "unfairly, unreasonably and unlawfully" conspired to mislead him and impede competition in the 3D camera market by eliminating Multivision as a competitor. Defendants' actions, Medina avers, violated the letter and spirit of the California Unfair Practices Act,[3] the California Cartwright Act, and Sections 1 and 2 of the Sherman Act. Medina further alleges that defendants' conspiracy led not only to his own detriment as Multivision's owner, but also to the detriment of consumers "who due to the lack of competition ended [up] with an inferior product at a price set by Microsoft alone instead of a competitive market." (SAC ¶ E25).

---

[3] This allegation, which comprises Medina's third claim, is addressed separately below, in subsection B.

4

As a preliminary matter, the UCL's standing provisions require plaintiffs to demonstrate injury in fact, and specifically to allege lost money or property as a result of unfair competition. Cal. Bus. & Prof. Code § 17204.  There are "innumerable ways" in which a plaintiff can show such economic injury, including having a "present or future property interest diminished." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).  Medina is subject to these standing limitations, rather than those the Sherman and Cartwright Acts impose on litigants raising claims directly under these antitrust statutes.  *See, e.g., In re Wellpoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880, 924-928 (C.D. Cal. 2012) (applying Sherman Act standing requirements to plaintiffs' antitrust allegations, while separately applying UCL standing requirements to plaintiffs' unfair competition claims based on the same conduct).  Standing is thus not a hurdle to Medina's claims, as the SAC does allege economic injury to Medina as a result of defendants' alleged unfair competition with Multivision.  Rather, Medina's second claim must be dismissed because it fails to meet the pleading requirements under the "unlawful, unfair, or fraudulent" prongs of the UCL.

To claim defendants have violated the "unlawful" prong of the UCL, Medina must demonstrate how defendants' conduct amounts to a predicate violation of some other law—aside from the Patent Act—as noted in this Court's prior order. (ECF No. 46); *see Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable") (citations and quotation marks omitted).  An "unlawful" business act actionable under the UCL is any business practice that is prohibited by law, whether "civil or criminal, statutory or judicially made . . . federal, state or local." *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1474 (2006) (citations omitted).  Here, Medina attempts to demonstrate that defendants have contravened federal and state antitrust laws.

1. Conspiracy to Restrain Trade

Section 1 of the Sherman Act and the California Cartwright Act forbid cooperation or combination of resources among two or more independent interests for the purpose of restraining trade or preventing market competition.  15 U.S.C. § 1; Cal. Bus. & Prof. Code § 16720 *et seq.*; *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 266 (1983) (citing *Lowell v. Mother's Cake & Cookie*

*Co.*, 79 Cal. App. 3d 13, 23 (1978)); *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189-90 (2010) (internal quotation marks and citations omitted). To maintain a cause of action under the Cartwright Act, a complaint must allege the formation and operation of a conspiracy; illegal acts committed pursuant thereto; a purpose to restrain trade; and damages caused by such acts. *G.H.I.I.*, 147 Cal. App. 3d at 265. Litigants must plead Cartwright Act violations with a high degree of particularity, alleging factual allegations of specific conduct directed toward furtherance of the conspiracy, in more than mere conclusory terms. *Id.* at 265-66. The Sherman Act similarly demands that litigants aver evidentiary facts to demonstrate the actual formation of an unlawful agreement. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (A complaint must answer "the basic questions: who, did what, to whom (or with whom), where, and when?"); *Twombly*, 550 U.S. at 557 ("A statement of parallel conduct, even conduct consciously undertaken," "without that further circumstance pointing toward a meeting of the minds," remains in "neutral territory.") In addition, it is well settled that a complaint for antitrust violations must allege "concerted action by separate entities maintaining separate and independent interests." *G.H.I.I.*, 147 Cal. App. 3d. at 266-67.

Medina's SAC fails to plead specific facts sufficient to support his theory that defendants formed a conspiracy. Although Medina does aver that his communications with Microsoft and Canesta and his ultimately fruitless negotiations with 3DV all misled him as to Multivision's commercial prospects, he alleges no actual "joint undertaking" or "meeting of the minds" among the defendants for the purpose of unlawfully competing with Multivision. *Id.* at 266; *Twombly*, 550 U.S. at 557. Lacking specific allegations as to an unlawful agreement's "who, where, and when," Medina's claim that Microsoft and other defendants acted "knowingly, willfully, wantonly, maliciously, oppressively, fraudulently, and with purpose and desire to injure Dr. Medina or destroy Dr. Medina's competition" is no more than conclusory. (SAC ¶ E26).[4] Nor does Microsoft's

---

[4] Because the SAC fails to surpass the initial hurdle of properly pleading sufficiently specific facts to support a conspiracy under the Cartwright Act and Section 1 of the Sherman Act, whether defendants were even separate entities maintaining separate and independent interests at the time of the allegedly unlawful acts--a point of dispute between the parties—is of little consequence to the resolution of the present motion. It bears noting, however, that even if the defendants' alleged actions in furtherance of conspiracy took place before Microsoft's alleged acquisition of Canesta and 3DV, this would not be dispositive of the existence of a conspiracy. Whether alleged

alleged acquisition of 3DV and Canesta through separate agreements with each company, as alleged in the SAC, evidence any unlawful collusion among the three defendants. *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 9 (2012) ("[T]he drafters did not intend the Cartwright Act to regulate the bona fide purchase and sale of one firm by another.") (internal quotation marks and citations omitted).

### 2. Microsoft's Unilateral Threat of Monopolization

As Medina points out in his Opposition to Defendant Microsoft's Motion to Dismiss, Section 2 of the Sherman Act outlaws independent anticompetitive conduct that monopolizes or "threatens actual monopolization," in addition to monopolization via concerted action. (ECF No. 72); 15 U.S.C. § 2. Medina is thus correct in asserting that he need not demonstrate a conspiracy in order to claim successfully that Microsoft behaved unlawfully. Medina's reliance on Section 2 of the Sherman Act nevertheless fails to provide him with a successful claim under the UCL's "unlawful" prong because the SAC falls far short of alleging that Microsoft has monopolized or threatens to monopolize the 3D camera sales market—"a category that is narrower than restraint of trade." *Am. Needle*, 560 U.S. at 190. Indeed, "it is not enough that a single firm appears to 'restrain trade' unreasonably," for "vigorous" competition "promotes the consumer interests that the Sherman Act aims to foster." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984). Congress thus enacted a particularly stringent standard for scrutiny of single firms under Section 2 of the Sherman Act. *Id.* at 768. Medina's vague assertions that Microsoft sold its camera below cost and later "sold together its 3D camera with the Xbox One for an overall profit" after acquiring Canesta and 3DV do not, without more, support the inference that Microsoft "threatens actual monopolization" of the 3D camera market. (SAC ¶ E14).

---

conspirators are "separate entities" with "independent interests" is an inquiry of competitive reality, not legal distinctions. Indeed, it is not determinative "that two legally distinct entities have organized themselves under a single umbrella or into a structured joint venture. The question is whether the agreement joins together 'independent centers of decisionmaking'" to deprive the marketplace unreasonably of a "diversity of entrepreneurial interests." *Am. Needle, Inc.*, 560 U.S. at 195 (internal quotation marks and citations omitted).

To the extent that Medina's SAC alleges that defendants' behavior was "unfair," this claim fails for the same reasons it did in his First Amended Complaint. As stated in this Court's prior order, an act is "unfair" under the UCL if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." (ECF No. 46); *Cel-Tech*, 20 Cal. 4th 187 (1999). Not only has Medina failed to demonstrate that defendants' acts have violated antitrust laws or caused comparable effects, as discussed above; he once again does not make the necessary showing of a "substantial" consumer injury.[5] *See Camacho,* 142 Cal. App. 4th at 1403. A mere conclusory allegation that Microsoft's actions have unfairly deprived consumers of choice, such that they have wound up with "an inferior product at high cost," does not speak to the nature, degree, or avoidability of the alleged injury suffered by consumers. *Id.*

Similarly, Medina's SAC alleges no additional facts to support a claim for fraudulent conduct under the UCL. As this Court's prior order noted, allegations of fraudulent conduct must be pled with specificity. (ECF No. 46). Medina's claims again fall short of showing "how" or "when" deception occurred. *See Cooper*, 137 F.3d at 627. Even more problematic, they do not show with any particularity deception of members of the public or harm to the public interest. *See Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). Because Medina's SAC fails to state a claim under the UCL, the second claim must be dismissed.

### B.  Third Claim: Violation of California Unfair Practices Act

California's Unfair Practices Act forbids any person doing business in the state from selling "any article or product at less than the cost thereof to such vendor, or [giving] away any article or product, for the purpose of injuring competitors or destroying competition." Cal. Bus. & Prof. Code

---

[5] As noted in this Court's prior order, the California Supreme Court has directed courts to look to the jurisprudence arising under section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, for guidance in applying the "unfair" prong of the UCL. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581 (2009). The factors defining "unfairness" under that section are: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006).

§ 17043.  To state a claim successfully under Section 17043, "a plaintiff must allege, in other than conclusionary terms, the defendant's sales price, costs in the product, and cost of doing business." *Fisherman' Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal. App. 4th 309, 322 (2003).

The SAC lacks sufficient allegations to meet these pleading standards.  The SAC states merely that Microsoft sold its 3D camera at a "subsidized, below cost price" in order to "destroy[] Multivision's competition and impede[] commercialization and sale of Dr. Medina's 3D camera," and that Microsoft later struck an agreement with the other defendants to "increase or control" its price once Microsoft had gained a dominant market share (SAC ¶ E14).

Furthermore, Medina's claims indicate that he should have ready access to the information necessary to meet Section 17043's pleading requirements, making the lack of discovery at this phase of litigation irrelevant.  While the court in *G.H.I.I. v. MTS, Inc.* excused the plaintiffs from providing supposed cost figures because they were in a poor position to speculate—and thus their cost allegations would add little to the notice given by the pleadings—Medina stands in a markedly different position and thus does not receive the same lenience.  *See G.H.I.I.*, 147 Cal. App. 3d at 275; *Indep. Journal Newspapers v. United W. Newspapers, Inc.*, 15 Cal. App. 3d 583, 587 (1971).  As the alleged owner of a company "involved in the development, manufacture, and sale of a three dimensional camera" in competition with Microsoft, Medina ought to be capable of relying on his own company's cost experiences to make reasonable allegations on information and belief regarding Microsoft's sales price, product cost, and cost of doing business.  (SAC ¶ D7).  And he should be able to do so in greater detail than the "conclusionary" figures provided in Medina's Opposition to Defendant Microsoft's Motion to Dismiss.  (*See* ECF No. 72, fn. 2).

Because Medina fails to meet Section 17043's pleading standards, the third claim is dismissed.  For the same reason, Section 17043 does not support Medina's allegation under the second claim that defendants acted unlawfully pursuant to the UCL, as discussed above.

## V.  CONCLUSION

For the aforementioned reasons, Medina's second and third claims are dismissed.  As this Court concluded in its prior order, it appears that defendants' alleged conduct falls primarily within Medina's first claim for patent infringement.  Where the gravamen of Medina's complaint is that

9

defendants infringed his patent (and were unfair and misleading in doing so), state law claims alleging unfair competition and business practices may not have a place in this lawsuit. Even with two prior opportunities to amend his UCL claim, Medina has not alleged facts sufficient to state a claim under this statute. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) (finding that the district court had discretion to deny leave to amend a second amended complaint where plaintiff had shown a "[r]epeated failure to cure deficiencies by amendments previously allowed"); *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996) (denying plaintiff leave to amend a second amended complaint where further amendment would be futile). Accordingly, the second claim is dismissed without further leave to amend. As the Ninth Circuit has instructed, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *See Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995). Medina's third claim is therefore dismissed with leave to amend. Should Medina elect to amend his pleadings, he must lodge an amended complaint within thirty (30) days from the date of this order.

The Case Management Conference scheduled on August 28, 2014 shall be continued to November 13, 2014 at 10:00 a.m. in Courtroom 3 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco. The parties shall file a Joint Case Management Statement at least one week prior to the Conference.

IT IS SO ORDERED.

Dated: 8/25/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE